# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

PROGRESSIVE AMERICAN )
INSURANCE COMPANY, )
 )
    Plaintiff, )
 )
v. )   Civil Action No. 3:21cv592–HEH
 )
JIREH HOUSE, INC., *et al.*, )
 )
    Defendants. )

## MEMORANDUM OPINION
**(Granting Plaintiff's Motion for Summary Judgment)**

THIS MATTER is before the Court on Progressive American Insurance Company's ("Plaintiff" or "Progressive") Motion for Summary Judgment (the "Motion") filed on May 20, 2022. (ECF No. 38.) The Motion asks the Court to declare that Progressive has no duty to defend or indemnify Defendant Joyce Ann Wiggins or Defendant Jireh House, Inc. in the underlying action brought in the Circuit Court of the City of Petersburg, Virginia. (Mot. at 1–2.)[1] The parties have submitted memoranda supporting their respective positions on the Motion and it is now ripe for review. The Court heard oral argument on June 16, 2022. For the reasons stated below and as stated at the hearing, the Court will grant the Motion.

---

[1] The Court will refer to the underlying case pending in the Circuit Court of the City of Petersburg, *Stout v. Wiggins*, No. 730-C-21000415-00 as the "Underlying Action." The complaint in that case will be referred to as the "Underlying Complaint." (ECF No. 38-9.)

## I. STANDARD OF REVIEW

Pursuant to Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 Fed. App'x 164, 166 (4th Cir. 2019). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor. *Anderson*, 477 U.S. at 248.

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must

be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007).

## II. BACKGROUND

Applying this standard, the relevant facts are as follows: Defendant Jireh House, Inc. ("Jireh House"), is a group home that cares for adults with intellectual disabilities.[2] (Pl.'s Mem. Supp. at 2, ECF No. 38-1.) As part of caring for those adults, Jireh House had to transport them to and from medical appointments. (*See id.* at 5.) For this purpose, in 2019, Jireh House owned two vehicles and bought insurance coverage for those vehicles through a policy issued by Progressive (the "Policy"). (Stout's Mem. Opp'n at 2, ECF No. 40; Policy Decls. at 2, ECF No. 38-4.) Those vehicles were a Dodge Grand Caravan and a Plymouth Grand Voyager.[3] (Policy Decls. at 2.)

---

[2] The Court includes some undisputed facts that are not included in either the Underlying Complaint or Progressive's insurance policy for context, but the inclusion of these facts does not change the ultimate outcome of the Motion.

[3] The Policy also insured a third vehicle, a Ford Winstar, (Policy Decls. at 2), but the parties agree that Jireh House sold that vehicle prior to 2019 (Stout's Mem. Opp'n at 2). The Ford Winstar likely remained on the Policy, unnoticed, because the Policy itself had been renewed continuously since 2007. (Pl.'s Mem. Supp. at 2.)

3

In 2019, Defendant Joyce Ann Wiggins ("Wiggins") worked for Jireh House. (Underlying Compl. ¶ 4, ECF No. 38-9.) As part of her job, Wiggins transported Jireh House residents to and from medical appointments. (Pl.'s Mem. Supp. at 5.) On May 13, 2019, Wiggins had to drive one of Jireh House's residents back from a medical appointment, but other employees were already using Jireh House's two vehicles. (Stout's Mem. Opp'n at 2–3.) Thus, Wiggins drove her own car, a Nissan Altima, to pick up the Jireh House resident. (Pl.'s Mem. Supp. at 5; Underlying Compl. ¶ 5.) While driving the Nissan Altima to pick up the resident, Wiggins collided with another vehicle driven by Defendant Ashley Stout ("Stout"). (Underlying Compl. ¶¶ 6–7.) Stout sustained various injuries from the collision. (*Id.* ¶ 12.) Stout sued Wiggins and Jireh House for negligence arising out of the accident in state court. (*Id.*)

Later, Progressive filed this lawsuit seeking a declaration from this Court that Progressive does not have any duty to defend or indemnify Wiggins or Jireh House in the underlying action.[4] (Am. Compl. at 10–11, ECF No. 22.) As stated above, Plaintiff has now filed the Motion asking the court to resolve this case on summary judgment.

### III. ANALYSIS

As a preliminary matter, when hearing a case arising out of diversity jurisdiction, a federal court must apply the choice of law rules of the forum state. *CACI Int'l, Inc. v. St. Paul Fire and Marine Ins.*, 566 F.3d 150, 154 (4th Cir. 2009) (citing *Klaxon Co. v.*

---

[4] Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), Defendant Virginia Association of Counties Group Self-Insurance Risk Pool ("VACORP"), and Defendant GEICO Indemnity Company ("GEICO"), are included as Defendants in the Amended Complaint because they insure various parties in the Underlying Action. (Am. Compl. ¶¶ 11–13.)

4

*Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). In this case, the forum state is Virginia. In Virginia, "the law of the place where an insurance contract is written and delivered" applies. *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993); *Penn. Nat'l Mut. Cas. Ins. Co. v. Block Roofing Corp.*, 754 F. Supp. 2d 819, 822 (E.D. Va. 2010). The Policy in this case was delivered to Jireh House in Virginia and written in Virginia. (Policy, ECF No. 38-5.) Thus, Virginia law applies.

The Court will first consider Progressive's duty to defend Wiggins or Jireh House. In Virginia, a court deciding whether an insurer has a duty to defend a lawsuit must *only consider* the allegations in the underlying complaint and the insurance policy itself. *AES Corp. v. Steadfast Ins.*, 725 S.E.2d 532, 535 (Va. 2012); *Penn. Nat'l*, 754 F. Supp. 2d at 822–23; *see St. Paul Fire*, 566 F.3d at 153. This so-called Eight Corners Rule is strictly enforced. *AES Corp.*, 725 S.E.2d at 535. Thus, in considering the Motion, the Court may only consider the Underlying Complaint and Progressive's Policy.

"[A]n insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy." *St. Paul Fire*, 566 F.3d at 155 (quoting *Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007)) (referring to this principle as the potentiality rule). Put another way, if the insurance policy would not cover any of the allegations in the complaint, the insurer has no duty to defend. *Penn. Nat'l*, 754 F. Supp. 2d at 823; *AES Corp.*, 725 S.E.2d at 535–36.

Here, the Underlying Complaint's allegations implicate Jireh House and Wiggins. It alleges that Wiggins negligently drove her vehicle and caused the accident.

5

(Underlying Compl. ¶¶ 4–10.) It further alleges that Jireh House is vicariously liable for Wiggins' negligence because she was acting within the scope of her employment. (*Id.*) Thus, Jireh House or Wiggins could potentially have to pay a judgment in the Underlying Action.

The next question, however, is whether the terms of the Policy could possibly cover that judgment. Under Virginia law, a court must follow contract terms as written and as the parties intended; a court may not conjure up new terms that the parties did not agree to. *Atl. Cas. Ins. Co. v. Connection Auto Sales, Inc.*, 508 F. Supp. 3d 10, 15 (E.D. Va. 2020) (citing *Pilot Life Ins. Co. v. Crosswhite*, 145 S.E.2d 143, 146 (Va. 1965). Normally, the words of a contract are given their ordinary and customary meaning. *Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co.*, 397 S.E.2d 876, 877 (Va. 1990). "Where an agreement is complete on its face [and] is plain and unambiguous in its terms, the [C]ourt is not at liberty to search for its meaning beyond the instrument itself." *Id.* (quoting *Globe Iron Constr. Co. v. First Nat'l Bank of Boston*, 140 S.E.2d 629, 633 (Va. 1965).

In this case, the Policy binds Progressive to pay "all sums an insured legally must pay as damages because of bodily injury or property damage . . . caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (Policy at 5 (emphasis removed).) The Policy further defines who is an "insured" and what is a "covered auto." An insured includes Jireh House for any covered auto and, with some exceptions, anyone else driving a covered auto with Jireh House's permission. (*Id.* at 6.)

6

To define what a "covered auto" is, the Policy lists 10 different coverage options called "symbols." (*Id.* at 4–5.) Each symbol is numbered and contains a paragraph describing the autos that the symbol would cover. (*Id.*) However, all 10 symbols do not apply to every Progressive policy. (*Id.*) Instead, a symbol only applies to a specific policy if its number is listed in the policy declarations of that policy. (*Id.* at 4–5.) In this case, Item Two of the Policy Declarations does not include any symbols, but it does include a notice that "Symbol 7 applies unless otherwise stated." (*Id.* at 1.) Thus, Symbol 7 is the *only* symbol that defines what a covered auto is under the Policy. Looking back to the language of the Policy, Symbol 7 describes a covered auto as:

> SPECIFICALLY DESCRIBED AUTOS. Only those autos described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage [for] any trailers you don't own while attached to any power unit described in Item Three).

(Policy at 4.) Item Three of the Policy Declarations goes on to describe three vehicles: (1) a Dodge Caravan; (2) a Plymouth Grand Voyager; and (3) a Ford Winstar. (Policy Decls. at 2–3.) Wiggins' Nissan Altima is not listed in the Policy Declarations.

Based on the language of the Policy, both Jireh House itself and Wiggins could be an insured, and therefore covered by the policy, for any accident involving the "ownership, maintenance, or use of a covered auto." (Policy at 5; *see* Policy at 6 (defining who is insured).)

The real heart of the dispute in this case is whether Wiggins was using a covered auto during the collision. On the day of the collision, Wiggins drove her personal car (Underlying Complaint ¶ 5), a Nissan Altima (Pl.'s Mem. Supp. at 5). According to the

Policy, the *only* covered autos are those specifically described in Item Three of the Policy Declarations. (Policy at 4.) Item Three specifically lists three cars but *does not* list the Nissan Altima. (Policy Decls. at 2–3.) Thus, the plain and unambiguous language of the contract clearly bars Wiggins' car from being a covered auto. Because the Nissan Altima is not a covered auto under the Policy, any damage arising out of Wiggins' collision with Stout cannot be covered by the Policy. (*See* Policy at 5.) Furthermore, because no coverage is possible based on the terms of the Policy and the allegations in the Underlying Complaint, Progressive has no duty to defend Jireh House or Wiggins in the Underlying Action. *See Penn. Nat'l*, 754 F. Supp. 2d at 823; *AES Corp.*, 725 S.E.2d at 535–36.

    State Farm and Stout make two arguments in an attempt to show that the language of the Policy is ambiguous and a duty to defend exists. First, Stout argues that the Policy's language defining who is an "insured" creates ambiguity. (Stout's Mem. Opp'n at 5; *see* Policy at 6.) Again, the Policy defines those insured as (1) Jireh House for any covered auto and (2) anyone else driving a covered auto with Jireh House's permission. (*Id.* at 6.) Stout argues that there are two exceptions to who is insured, which complicate matters. (Stout's Mem. Opp'n at 5.) The first exception excludes the owner of a covered auto that Jireh House hires or borrows. (Policy at 6.) The second exception excludes any of Jireh House's employees if the covered auto is owned by that employee. (*Id.*) In Stout's opinion, these exceptions are nonsensical because they would exclude all circumstances where Jireh House would borrow a vehicle. (Stout's Mem. Opp'n at 6.)

8

Stout, however, forgets that a borrowed or hired vehicle is only covered when it is *also* a covered auto. (Policy at 6.) Jireh House elected not to pay for coverage for borrowed or hired vehicles and only received coverage in the Policy for those specifically described in the Policy Declarations. (Policy at 4 (defining Symbol 7); Policy Decls. at 2; *see* Policy at 4 (defining Symbol 1 and 8 as more expansive insurance coverage options).) Thus, the exceptions that Stout complains about above are not even implicated in this case because, based on the Policy's language and the allegations in the Underlying Complaint, Wiggins' vehicle certainly was not a covered auto.

Yet, even if the exceptions did apply, the Court cannot agree that they are ambiguous. The Policy's exceptions for owners of hired or borrowed vehicles and employee-owned vehicles *do not* exclude all possible circumstances. For example, assuming the vehicle is a covered auto, an employee driving a vehicle that Jireh House borrowed from another employee would likely be "insured" by the Policy. (Policy at 6.) Moreover, any employee driving a covered auto that was hired or borrowed from a third party would still be covered by the Policy. (*See id.*) Stout's arguments are unconvincing and do not point out any relevant ambiguities in Progressive's Policy.

Second, State Farm argues that the Policy is ambiguous because it does not define what a "rated driver" is and how it affects the Policy. (State Farm's Mem. Opp'n at 3–4, ECF No. 41.) The Policy Declarations list 14 people, including Wiggins, as rated drivers. (Policy Decls. at 2.) The Policy, however, never describes what rated drivers are or how they affect the terms of the agreement. While State Farm contends this absence creates ambiguity, the Court finds the opposite. The fact that the Policy never mentions the term

"rated driver" in its language defining who is insured or what autos are covered plainly and unambiguously shows that rated drivers have *no effect* on those determinations. The Court will not manufacture a definition of "rated driver" out of whole cloth and have it affect the plain language of the Policy. In fact, Virginia law clearly states that this Court *may not* do that.[5] *Graphic Arts Mut. Ins. Co.*, 397 S.E.2d at 877; *Globe Iron Constr. Co.*, 140 S.E.2d at 633. Thus, the Court cannot accept State Farm's argument that the Policy is ambiguous and instead concludes that Progressive has no duty to defend Wiggins or Jireh House in the Underlying Action.

The Court must next consider Progressive's duty to indemnify Wiggins or Jireh House in the Underlying Action. The duty to defend is broader than the duty to indemnify in that the duty to defend can be decided on the *allegations* in a complaint, whereas the duty to indemnify is based on evidence proven at trial. *Penn Nat'l*, 754 F. Supp. 2d at 827; *Cap. Env't Servs., Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 640 (E.D. Va. 2008). For this reason, courts often defer deciding whether a duty to indemnify exists until after trial. *See, e.g.*, *Cap. Env't Servs., Inc.*, 536 F. Supp. 2d at 646 (finding that a decision on indemnification was premature); *Builders Mut. Ins. Co. v. Futura Grp., L.L.C.*, 779 F. Supp. 2d 529, 534–35 (E.D. Va. 2011) (finding the same). That said, "no such factfinding is necessary if there is no duty *to defend*." *Penn Am. Ins. Co. v. Coffey*,

---

[5] Moreover, deposition testimony from an employee of Progressive confirms that someone being a rated driver does not affect the Policy's coverage but only affects the premiums charged under the Policy for that coverage. (David Hale Dep. 37:10–38:1, ECF No. 38-6.) The Court, however, cannot rely on this evidence under the Eight Corners Rule and merely notes it as background.

10

368 F.3d 409, 413 (4th Cir. 2004). Consequently, if a court finds there is no duty to defend, there is also no duty to indemnify. *Id.*; *see Builders Mut. Ins. Co.*, 779 F. Supp. 2d at 534; *Selective Way Ins. Co. v. Crawl Space Door Sys., Inc.*, 162 F. Supp. 3d 547, 552 (E.D. Va. 2016). The Court has found that Progressive has no duty to defend Wiggins or Jireh House in the Underlying Action and, accordingly, Progressive has no duty to indemnify either party.

## IV. CONCLUSION

According to the undisputed evidence, most notably the terms of the Policy and the Underlying Complaint, Progressive has no duty to defend, and therefore, has no duty to indemnify, Jireh House or Wiggins in the Underlying Action. Therefore, the Court will grant Plaintiff's Motion for Summary Judgment.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: June 22, 2022
Richmond, Virginia